UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LARRY TARONE HARRISON,

                    Petitioner,                    Case Number 10-10723
                                                  Honorable Thomas L. Ludington

v.

GREGORY FOREST,

                    Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Larry Tarone Harrison, Jr., filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Washtenaw Circuit Court of indecent exposure, Mich. Comp. Laws § 750.335. After a second proceeding he was found by a jury to be a sexually delinquent person under Mich. Comp. Laws § 750.10a and was sentenced to a term of five years of probation.  Petitioner was discharged from probation on March 3, 2010, a little more than week after he initiated the instant action. The petition raises ten claims challenging the validity of his conviction. For the following reasons, the petition will be denied

### I

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> After a series of indecent exposures took place in Ann Arbor, Michigan, a task force was formed to catch the perpetrator. Police testified that most indecent exposures were random events that were induced by fraternity antics or excessive alcohol consumption. However, the series of indecent exposures that initiated the creation of a task force involved the act of masturbation, the perpetrator approached

his victims while committing this act, and the perpetrator attempted to get the victims' attention during the act. Defendant became a person of interest when he was seen in the vicinity of an indecent exposure and matched the stature and build of the perpetrator as described by the victims.

On December 6, 2004, Erin Sorenson, a student at the University of Michigan, lived at 1322 Minerva Street with three female roommates. That evening, the women were trying to move their vehicles into the driveway, but one of the cars would not start. They were outside when they noticed a man standing down the street. The women went inside their home to decide how to handle the disabled vehicle. Sorenson heard one of her roommates scream. She proceeded to the front door of the home. There, Sorenson saw a man standing on the doormat at the front door masturbating. It was the same man who had been standing down the street when the women were outside. The man's genitals were visible, his sweatpants were at his knees, and the man was using his right hand to masturbate. The perpetrator was wearing gray sweatpants and a navy turtleneck. Sorenson screamed and hid behind a wall of the home while a roommate called the police. She was unable to identify the facial features of the man at her front door. However, she described the perpetrator as 6'2" tall with very broad shoulders. Sorenson characterized the man as having a muscular build or a "football type" structure.

Laura Thome, Sorenson's roommate, testified that she was outside with her roommates moving their cars off the street. One of the vehicles would not start, and the roommates went into their home to discuss the situation. Thome began to collect the trash to take it to the curb. When she opened the front door, she was startled by a man walking toward the front door. She screamed, but the man came closer to the porch. Thome had difficulty seeing the man because the porch light was burned out and there was a glare from the interior lighting. Despite her problems with visibility, Thome observed an African-American male with a football-type build wearing his gray sweatpants at his knees.

Ann Arbor Police Officer Craig Lee was a member of the task force created to apprehend the perpetrator of indecent exposures that involved the act of masturbation. After receiving the report of the indecent exposure on Minerva Street, police conducted surveillance of the area. Officer Lee observed defendant driving his vehicle. Defendant's vehicle came to a complete stop when there were no traffic signals or pedestrians in the roadway. Defendant left his vehicle in a parking lot and proceeded to walk on South Division Street. Officer Lee parked his unmarked vehicle in front of 730 South Division Street. This location was consistent with the pattern of prior indecent exposures. There was a home with a large picture window with the blinds open, and the lights on inside. Three females were visible through the picture window sitting inside the house. Officer Lee saw defendant approach the home, pull his sweatpants down with his left hand, and begin to masturbate with his right hand. Defendant walked away from the residence into the street, and his acts were illuminated by the street lights. Officer Lee and Sergeant Brian Jatczak, another

member of the task force, identified themselves as police officers. Defendant pulled shorts that he was wearing under his sweatpants up to his waist. However, his sweatpants were still at his knees when he was placed under arrest. Defendant told officers that he was searching for his identification and that his hands were cold.

*People v. Harrison*, 2008 Mich. App. LEXIS 649, *1-5 (Mich. Ct. App. Mar. 27).

Based on this evidence, a jury convicted Petitioner of indecent exposure. The trial court then empaneled a second jury to determine whether Petitioner should be sentenced as a sexually delinquent person pursuant to Mich. Comp. Laws § 750.10a and *People v. Helzer*, 273 N.W.2d 44 (Mich. 1978). During this second proceeding much of the same evidence was presented, and the jury found that Petitioner was a sexually delinquent person when he committed the charged act of indecent exposure. Petitioner was subsequently sentenced to five years of probation.

Following sentencing, Petitioner filed a direct appeal in the Michigan Court of Appeals and asserted the following claims:

I. Where the evidence offered at the preliminary examination failed to establish good reason to believe Larry Harrison perpetrated the alleged act of indecent exposure, the magistrate abused his discretion in binding Mr. Harrison over for trial, and the circuit court's refusal to quash the information was an error of law.

II. Whether the prosecution was permitted to offer in its case in chief in both trials evidence that the defendant had engaged in other, unrelated, acts of indecent exposure, and where this evidence did not meet the standards for admissibility under M.R.E. 404(b) or the due process clauses, and where the evidence was substantially more prejudicial than probative, the defendant was deprived of a fair trial.

III. Mr. Harrison's conviction for indecent exposure in the first trial was based on insufficient evidence in violation of his due process rights.

IV. Mr. Harrison's conviction for being a sexually delinquent person in the second trial was based on insufficient evidence in violation of his due process rights.

V. Where the trial prosecutor improperly and repeatedly told the jury during the first trial that the series of indecent exposures ended when Mr. Harrison was arrested in a way that put the prestige of his office and the police department behind the assertion, prosecutorial misconduct deprived Mr. Harrison of due process and of a fair trial, even absent any objection.

-3-

VI. Where the jury was instructed in the sexual delinquency trial as to three distinct acts which could support a finding of sexual delinquency, and the jury was not told it had to unanimously agree on one of them in order to convict; and where the jury was instructed in such a way concerning the date of the offense that some jurors may have voted to convict based on the incident on December 6 and some may have voted to convict based on the incident on December 7, which would convict Mr. Harrison of a crime he was not on trial for, Mr. Harrison was deprived of his constitutional rights to a unanimous jury verdict, and to be convicted only of a crime for which he was being tried.

VII. Where the trial court refused to adjourn the second trial in order to permit the defense attorney to obtain transcripts of the testimony at the first trial, Mr. Harrison was deprived of his right to a fair trial, to due process of law, and to effective assistance of counsel, and a new trial must be granted.

VIII. The Michigan indecent exposure statute is unconstitutionally vague and deprived Mr. Harrison of due process as guaranteed by the Michigan and U.S. Constitutions.

IX. The Michigan sexually delinquent person statute is unconstitutionally vague and deprives Mr. Harrison of due process as guaranteed by the Michigan and United States Constitutions.

X. The Michigan sexually delinquent person statute violates the constitutional right to notice and deprives Mr. Harrison of due process as guaranteed by the Michigan and U.S. constitutions.

XI. The Michigan sexually delinquent person statute unconstitutionally criminalizes Mr. Harrison's status as a sex offender, and deprives Mr. Harrison of due process as guaranteed by the Michigan and U.S. constitutions.

XII. Even if no single assignment of error is sufficient for reversal, the totality of errors denied Mr. Harrison a fair trial.

The Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *Id.*

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court

which raised the same claims. The Michigan Supreme Court denied the application in a standard

order. *People v. Harrison*, 482 Mich. 1065(2008)(table).

-4-

Petitioner then filed the instant application for habeas relief, asserting the first ten claims he presented to the state courts on direct appeal. The petition also includes an eleventh issue, arguing that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), is unconstitutional.

## II

AEDPA, which governs this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state-court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, "the state court's [application of federal law] must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409, (2000) (internal quotes omitted)).

Additionally, this Court must presume that the state court's factual determinations are correct. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous") (citation omitted).

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases . . . .

> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Williams*, 529 U.S. at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

The Supreme Court has continued to emphasize the limited nature of this review. In its recent unanimous decision in *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770 (2011), the Supreme Court reiterated that the AEDPA requires federal habeas courts to review state-court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 785-86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

-6-

### III

### A

Petitioner first claims that his trial was rendered fundamentally unfair by the erroneous introduction of other-acts evidence. Specifically, Petitioner asserts that the trial court erroneously allowed police testimony regarding the fact that a task force had been formed to abduct the perpetrator of numerous acts of indecent exposure, and the suggestion that Petitioner was responsible for all of the incidents. Petitioner also claims that evidence regarding the August 4, 2004, incident on Michigan Avenue–where the victim identified Petitioner as the perpetrator–was erroneously admitted at trial because it was not one of the charged acts. Lastly, Petitioner asserts that evidence regarding the December 7, 2004, incident on Division Street–which resulted in his arrest–was also somehow irrelevant to the charged act. Respondent asserts that these claims are not cognizable in this action because they cannot be supported by clearly established Supreme Court law. Respondent is correct.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id*. Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *See Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).

Petitioner claims that the complained-of testimony was admitted in violation of Michigan Rule of Evidence 404(b). But a claimed violation of this evidentiary rule or any other provision of state law is non-cognizable on habeas review. *See Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007);

-7-

*Estelle*, 502 U.S. at 72 (noting that the Supreme Court's habeas powers did not permit a court to reverse a state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. United States*, 493 U.S. 342, 352-53 (1990) (admission at a defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process).

The admission of "prior bad acts" or "other acts" evidence against Petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell*, 329 F. 3d 496, 512 (6th Cir. 2003); *see also Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Given the absence of Supreme Court authority on the issue of whether a state court violates a habeas petitioner's due process rights by the admission of evidence to establish Petitioner's propensity to commit criminal acts, the Michigan Court of Appeals' rejection of Petitioner's claim was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten*, 552 U.S. 120,(2008); *Carey v. Musladin*, 549 U.S. 70, 77( 2006).

To the extent that Petitioner contends that the evidence of the prior indecent exposures should have been excluded under Michigan Rules of Evidence 403 for being more prejudicial than probative, he likewise would not be entitled to habeas relief. Appraisals of the probative and prejudicial value of evidence are entrusted to the sound discretion of a state trial court judge, and a federal court considering a habeas petition must not disturb that appraisal absent an error of constitutional dimensions. *See Dell v. Straub*, 194 F. Supp. 2d 629, 645 (E.D. Mich. 2002). So long

as a state court's determination that evidence is more probative than prejudicial is reasonable, a federal court on habeas review will not overturn a state court conviction. *See Clark v. O'Dea*, 257 F.3d 498, 503 (6th Cir. 2001).

The Michigan Court of Appeals concluded that the evidence of the prior incidents was admissible because it supported a finding that the charged and uncharged acts were part of Petitioner's common plan or system to approach houses occupied by female college students, attempt to gain their attention, and then masturbate in front of them. The Division Street and Michigan Avenue incidents also tended to establish Petitioner's identity as the perpetrator of the charged act occurring on Minerva Street. Petitioner was identified by a victim after the Michigan Avenue incident, and he was identified by a plain-clothed officer tailing him after the Division Street incident. The Division Street incident occurred just after the charged incident, and in fact, the officer located Petitioner's vehicle as a result of a 9-1-1 call placed by the victims of the charged incident.

With respect to the references to the numerous other unsolved incidents, the state court found that defense counsel opened the door to that testimony through cross-examination, and by his defense theory that Petitioner was falsely accused because the police felt public pressure to stop the string of incidents. Even if there was established Supreme Court law supporting Petitioner's claim, there is nothing objectively unreasonable about the rationale relied upon by the state court to deny the claim. Petitioner is not entitled to habeas relief on his claim.

**B**

Petitioner's second claim asserts that there was insufficient evidence to support his indecent exposure conviction. His third claim asserts that insufficient evidence was admitted to sustain his

conviction for being a sexually delinquent person.   Respondent argues that the state courts reasonably rejected these claims on the merits.

As an initial matter, Petitioner asserts that once the improperly admitted prior-acts evidence is discounted, the remaining evidence was insufficient to demonstrate his identity for the charged offenses.  This argument has been categorically rejected by the Supreme Court.  *See McDaniel v. Brown*, 558 U.S. ---, 130 S.Ct. 665, 672 (2010) (in deciding whether evidence is legally sufficient, the reviewing court considers even improperly admitted evidence).  Accordingly, the Court must consider all the evidence admitted by trial, correctly or not, in determining whether sufficient evidence was presented to sustain Petitioner's convictions.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319(1979) (emphasis in original).  The Supreme Court recently characterized this standard as requiring a defendant to show that the jury's verdict "was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012).

Under AEDPA review, the standard becomes more difficult for a habeas petitioner to meet. This is because "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " *Ibid*. This "twice

deferential" standard does not permit a habeas court to engage in a fine-grained factual parsing. *Coleman*, 132 S. Ct. at 2064; *Parker v. Matthews*, 2012 U.S. LEXIS 4306 (U.S. June 11, 2012).

Here, the Michigan Court of Appeals cited the *Jackson* standard, and then applied it to the facts of Petitioner's case in a manner that was not objectively unreasonable. The Court noted that the women at the Minerva Street incident observed a very large athletic African-American male masturbating on their porch with his right hand. Although none of these woman identified Petitioner, they placed a 9-1-1 call. An undercover officer then located Petitioner's car in the neighborhood and followed him to a nearby home on Division Street. The officer observed Petitioner approach an unshaded picture-frame window on foot and masturbate in front of it. Several college-aged women were sitting in the room but were unable to see outside because of the glare. Petitioner was then arrested by the officer. He matched the general description given by the women at the Minerva Street house, and clothes in his car matched their description of what the perpetrator was wearing. The inference that Petitioner was the man responsible for both incidents was not so insupportable as to fall below the threshold of bare rationality, and it certainly allowed the state appellate court to reasonably reject the claim.

As for the sexually delinquent person charge, Michigan law requires that the defendant "committed repetitive or compulsive acts that demonstrate a disregard of consequences or the recognized rights of others." Mich. Comp. Laws § 750.10a. The evidence presented at the second proceeding allowed the jury to rationally find that Petitioner was responsible for the Division, Minerva, and Michigan incidents, and that he therefore did so in a manner that was compulsive and showed a disregard of consequences. The state court therefore reasonably rejected this claim as well. Petitioner's further complaints about the state court decision would require the sort of "fine-

-11-

grained factual parsing" prohibited by the AEDPA.  He is therefore not entitled to habeas relief based on his second or third claims.

C

Petitioner's fourth claim asserts that the prosecutor committed misconduct.  Specifically, he argues that it was improper for the prosecutor to comment during closing argument about how the series of indecent exposure incidents corresponded with Petitioner's availability during the college football season and how they stopped after Petitioner's arrest.  Petitioner did not object to the comments at trial.  Respondent argues that the claim is therefore procedurally barred.

Michigan law requires that a criminal defendant object to prosecutorial misconduct in order to preserve such a claim for appellate review. *See Burton v. Bock*, 320 F. Supp. 2d 582, 589 (E.D. Mich. 2004) (citing *People v. Ullah*, 550 N.W.2d 568 (Mich. Ct. App. 1996)); *see also People v. Stanaway*, 521 N.W. 2d 557 (Mich. 1994).   This rule is firmly established and regularly followed by the state courts.  *Johnson v. Sherry*, 586 F.3d 439, 444-45 (6th Cir. 2009).  The Michigan Court of Appeals found in this case that by failing to object at trial to the prosecutor's comments, Petitioner had not preserved his claim, and therefore it reviewed the claim only to determine whether plain error occurred.

If a state appellate court applies a plain error standard of review because the criminal defendant did not raise the issue in the trial court, as here, federal courts are barred from reaching the merits of the claim on habeas review. *See Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.  2010). A petitioner can overcome the procedural bar on habeas review only by showing cause for noncompliance with the state procedural rule and actual prejudice arising from the alleged misapplication of the constitutional rule at issue. *Id*. at 244-45

Demonstrating cause requires showing that an objective factor external to the defense

-12-

impeded counsel's effort to comply with the state procedural rule. *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006).  To show prejudice, the Petitioner must demonstrate that the constitutional error worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170(1982). There is no prejudice where the petitioner does not show a reasonable probability of a different verdict. *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

The Petitioner cannot establish cause to excuse his default on this record. The Petitioner cannot establish cause because he has not established or even argued that an objective factor external to the defense prevented him from complying with the contemporaneous objection rule.  He does not, for example, argue that his trial counsel was ineffective for failing to object to the comments. But even if he did attempt to make such an argument, it could not be considered because it was never presented to the state courts.  *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (To serve as cause excusing a procedural default, a claim of ineffective assistance of counsel must itself be properly exhausted.).

Accordingly, Petitioner's prosecutorial misconduct claim is barred from review and he is unable to demonstrate cause to excuse his default.

**D**

Petitioner's fifth claim is that the jury was erroneously instructed with respect to the sexually delinquent person charge.  First, he argues that the jury should have been expressly instructed to limit their consideration to the Minerva Street incident.  Second, he asserts that he was denied his right to a unanimous verdict when the jury was not instructed that they were required to agree on one of the three possible alternative bases for the third element of the sexually delinquent person charge.  Respondent argues that this claim is likewise defaulted because Petitioner's counsel

-13-

expressed satisfaction with the jury instructions at trial.  Petitioner rejoins by noting that his counsel objected to the trial court's proposed jury instructions on these bases, and that his subsequent approval of the instructions after they were read did not serve as a withdrawal of his earlier objection.

While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Thus, while a procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted).  Here, the merit of the claim is more easily resolvable than the issues raised by Respondent's procedural default argument and the merits of Petitioner's fifth claim will be addressed.

With respect to Petitioner's first allegation, an erroneous jury instruction warrants habeas corpus relief only where the instruction " 'so infected the entire trial that the resulting conviction violates due process.' " *Estelle v. McGuire*, 502 U.S. 62, 72 (1991), (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). A defendant's due process rights may be violated if the jury is instructed on an offense not included in the indictment, and the defendant did not have notice that he might be charged with that offense. *Schmuck v. United States*, 489 U.S. 705, 717-18 (1989).

The criminal information in Petitioner's case listed the date of the offense as "on or about 12-6-2004," and alleged that "on the date and location described: 1322 Minerva, the defendant: did knowingly make an open or indecent exposure of his or her person. . . ." and "was a person whose sexual behavior was characterized by repetitive or compulsive acts which indicate a disregard of the

-14-

consequences or the recognized rights of others. . . ."  When the trial court instructed the jury on the elements of the crime, it omitted any mention of Minerva, and stated only that "[t]he prosecutor must prove beyond a reasonable doubt that the crime occurred on or about December 6, 2004, within the City of Ann Arbor here in Washtenaw County." Trial Tr. vol. III at 118-19, Dec. 14, 2005. Petitioner contends that because the Division Street incident also occurred on or about December 6, 2004, the jury may have convicted him based on that incident instead of the Minerva Street one.

Any such ambiguity in the jury instructions did not violate Petitioner's rights under *Schmuck*. The jury was informed before trial that the charges against Petitioner concerned to the Minerva incident.  Trial Tr. vol. I at 38-39, Dec. 12, 2005.  And the prosecutor's theory of the case was that Petitioner was guilty of being a sexually delinquent person at the time of the Minerva Street incident.   Trial Tr. vol. I at 277.    Moreover, the jury was instructed that the other acts evidence–which would include the Division Street incident–was only to be considered to show that Petitioner "used a plan, system or characteristic scheme that he has used before or since, and/or he who (sic) committed the crime that the Defendant is charged with."  Trial Tr. vol. III at 116. Juries are presumed to follow their instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  There is no reason to believe that the jury ignored the other-acts instruction and convicted him of being a sexually delinquent person for his conduct on Division Street.

With respect to Petitioner's second argument, in *Schad v. Arizona*, 501 U.S. 624 (1991), a plurality of the United States Supreme Court held that a conviction under an instruction that did not require the jury to unanimously agree upon one of the alternative theories of premeditated murder and felony murder did not constitute a denial of due process. *Schad*, 501 U.S. at 631 (plurality opinion). The *Schad* plurality held that where a general verdict as to first degree murder was permissible under state law, the failure to require the jury to agree as to a single theory did not

-15-

violate due process. *Id.* at 637.

Here, the trial court instructed the jury on three alternative bases on which it could find Petitioner satisfied the third element of being a sexually delinquent person:

> And third, that the acts of Defendant disregarded the consequences or recognized rights of others.  Or by the use of force upon another person attempting sex relations of either a heterosexual or homosexual nature.  Or be the commission of sexual aggressions against children under the age of 16.

Trial Tr. vol. III at 118-19.

The fact that there are three alternative ways to satisfy this element did not require a separate unanimity instruction—it was sufficient that the trial court instructed the jury as it did, that the element could be satisfied in multiple ways.  *See United States v. DeJohn*, 368 F.3d 533, 542 (6th Cir. 2004) (under federal firearm possession statute, jury need not be instructed that it must unanimously find possession of a particular firearm).  Petitioner's fifth habeas claim is therefore without merit.

### E

Petitioner's sixth habeas claim asserts that his trial attorney was unable to effectively represent him during the sexually delinquent person proceeding because the trial court insisted on conducting this second phase before transcripts of the first trial could be prepared  Respondent asserts that the state courts reasonably decided this claim against Petitioner.

In *Britt v. North Carolina*, 404 U.S. 226 (1971), the case primarily relied upon by Petitioner, the Supreme Court held that an indigent defendant is entitled to a copy of transcripts of a prior court proceeding when the transcripts are needed for effective defense or appeal.  *See also United States v. Young*, 472 F.2d 628 (6th Cir. 1972).

-16-

In the present case neither the defense nor the prosecution had the transcript of the first proceeding, but the trial court made a CD recording of the first trial available to the defense for his use during the second trial. Trial Tr. vol. I, 262-65, Dec. 12, 2005.  The trial court did not simply deny Petitioner a copy of a prepared transcript because he could not afford to pay for it as in *Britt*—the transcript was not available to either side. Thus, the present case is distinguishable from *Britt*. *See Davidson v. Burt*, 2011 U.S. Dist. LEXIS 5868, 27-28 (E.D. Mich. Jan. 21, 2011).

Moreover, unlike *Britt,* Petitioner merely contends that he should have been granted a continuance so that he could obtain a presumably otherwise available transcript. In these circumstances, the normal denial-of-continuance standard of review, rather than *Britt*, is applicable. *See United States v. Hagen*, 831 F.2d 298, 1987 WL 38777, at *3 (6th Cir. 1987) (applying abuse of discretion standard to trial court's denial of continuance to obtain transcript); *see also, United States v. Zamora-Hernandez*, 222 F.3d 1046, 1049 (9th Cir. 2000) (defendant was not denied due process by failure of trial court to grant continuance so that he could obtain transcript where he did not show any prejudice).

Although the Supreme Court has not more specifically set forth governing standards to determine when a failure to grant a continuance will constitute a denial of the right to present a meaningful defense, the Court has noted that the grant or denial of a motion for a continuance is within the sound discretion of the trial judge, and will be reviewed only for an abuse of that discretion. *See Avery v. Alabama*, 308 U.S. 444, 446 (1940). The Court has also explained that "[i]t would take an extreme case to make the action of the trial court in such a case a denial of due process of law." *Franklin v. South Carolina*, 218 U.S. 161, 168 (1910).  In short, "broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to assistance of

-17-

counsel." *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983). Importantly, denial of a continuance amounts to a due process violation warranting habeas relief only where the petitioner shows that he was prejudiced by the omission of the evidence he would have procured had the continuance been granted. *See Mackey v. Dutton*, 217 F.3d 399, 408 (6th Cir. 2000).

Petitioner has not demonstrated that he was prejudiced by the denial of a continuance. He points to only one incident in the second proceeding where he claims a transcript was necessary for his defense. Kathrine Karlson testified at the first trial regarding the August 2004 incident. She conceded that she had picked-out a photograph of a 55-year-old man as the perpetrator of that incident before identifying Petitioner. During the second proceeding, she stated that she could not recall the misidentification. To the extent she could have been impeached by her prior testimony, Petitioner has not shown why he could not have used the CD recording in the same way he could have used a transcript. And, in any event, Petitioner's identity as the perpetrator of the charged incident was established when he was caught red-handed doing substantially the same thing a few hours later by a police officer. Petitioner has therefore not demonstrated entitlement to relief with respect to this claim.

### F

Petitioner's seventh claim asserts that Michigan's indecent exposure statute is unconstitutionally vague.

Due process requires that laws give people of ordinary intelligence fair notice of what is prohibited. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The Supreme Court has indicated that "[t]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v.*

-18-

*Lawson*, 461 U.S. 352, 357 (1983).  A law thus fails to comport with the Due Process Clause of the federal constitution "if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits. . . ." *Giaccio v. Pennsylvania*, 382 U.S. 399, 402-03 (1966). The problem with a vague law or statute is that it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned*, 408 U.S. at 108-09.  Vagueness is an "as applied" test: to challenge a statute for vagueness, plaintiff must show that the statute is vague as applied to him. *Parker v. Levy*, 417 U.S. 733, 753-58 (1974).

> Michigan's indecent exposure statute provides:
>
> Any person who shall knowingly make any open or indecent exposure of his or her person or the person of another shall be guilty of a misdemeanor, punishable by imprisonment in the county jail for not more than 1 year, or by a fine of not more than $ 500.00, or if such person was at the time of the said offense a sexually delinquent person, may be punished by imprisonment in the state prison for an indeterminate term, the minimum of which shall be 1 day and the maximum of which shall be life: Provided, That any other provision of any other statute notwithstanding, said offense shall be triable only in a court of record.

Mich. Comp. Laws § 750.335a.

Petitioner contends that the terms "open," "indecent," and "exposure" are unconstitutionally vague.  As applied to Petitioner's conduct, though, they are not.  Petitioner was charged with standing on the front doormat of a house occupied by female college students, dropping his sweat-pants to his knees, and masturbating while facing the door.  The terms used in the statute are clear enough to fairly inform an ordinary person that the particular conduct Petitioner was engaged in violated the statute.  What he did would be understood by any ordinary person as being "open," "indecent," and "exposed."  More importantly, the state court's determination that the statute was not unconstitutionally vague was at least a decision with which fair-minded jurists could disagree.

-19-

*Harrington,* 131 S. Ct. at 785.  Petitioner has therefore not demonstrated entitlement to habeas relief based on this claim.

### G

Petitioner next asserts that the Michigan's sexually delinquent person statute is unconstitutionally vague.

Mich. Comp. Laws § 750.10a provides

The term "sexually delinquent person" when used in this act shall mean any person whose sexual behavior is characterized by repetitive or compulsive acts which indicate a disregard of consequences or the recognized rights of others, or by the use of force upon another person in attempting sex relations of either a heterosexual or homosexual nature, or by the commission of sexual aggressions against children under the age of 16.

Petitioner asserts that the terms "repetitive or compulsive acts," "disregard of consequences or the recognized rights of others," "the use of force upon another person," and "commission of sexual aggressions," are too vague to withstand constitutional scrutiny.

Again, the challenge is an "as applied" one.  Petitioner must show that an ordinary person would not have fairly been put on notice that repeatedly masturbating in front of college women's houses after attempting to draw their attention would make them a sexually delinquent person. The sexually delinquent person statute states in plain terms that compulsive, repetitive sexual conduct heedless of the consequences or the rights of others will subject a guilty party to alternate sentencing provisions. Defendant's repeated acts of public masturbation aimed at college women provided him with adequate notice that he could be subject to the sexually delinquent person sentencing provisions.

Again, at the very least, jurists of reason could disagree whether the sexually delinquent person statute is vague.  Therefore, Petitioner has failed to establish entitlement to relief.

-20-

**H**

Petitioner's related ninth claim asserts that as a result of the vagueness in the sexually delinquent person statute, he had inadequate notice that he could be sentenced under its provision after a single conviction of indecent exposure.  He asserts that an ordinary person reading the statute would believe that the provision only applies to recidivists and not to first offenders.

That is not how the statutes read.  The indecent exposure statute, quoted above, criminalizes a single act.  The statute then goes on to provide alternative sentencing provisions.  It states a default penalty of one-year or a fine of not more than $1,000.  It then provides that if the defendant, at the time of the offense, is a sexually delinquent person, then the penalty is increased to a prison term ranging anywhere from one-day to life.  The statute says nothing about multiple convictions; it simply refers to the defendant's status at the time he commits the offense.  The language of the sexually delinquent person statute, also quoted above, does not support Petitioner's argument either. While it does refer to "repetitive" sexual behavior, it does not limit that term to conduct that resulted in prior convictions.

The Supreme Court has cautioned that "for the purpose of determining whether a state statute is too vague and indefinite to constitute valid legislation [a reviewing court] must take the statute as though it read precisely as the highest court of the State has interpreted it." *Kolender*, 461 U.S. at 355-36, n.4 (citations and internal quotation marks omitted). At the time Petitioner committed the offense, the statute had long been interpreted by the Michigan Supreme Court as not requiring prior convictions to support sentencing under the sexually delinquent person law.  *See People v. Helzer*, 273 N.W.2d 44, 49 n.11(Mich. 1978) ("[T]hough the sexual delinquency prosecution must be defined in terms of a contemporaneous conviction on the principal charge, the court or jury is not limited to record convictions in their deliberations.").  That is, Petitioner was put on fair notice that

-21-

he could be sentenced as a sexually delinquent person even after his first conviction for indecent exposure.  Petitioner's ninth claim is without merit.

## I

Petitioner's tenth claim asserts that the sexually delinquent person law is also unconstitutional because it criminalizes his status instead of his illegal actions.

In *Robinson v. California*, 370 U.S. 660, 666-67 (1962), the Supreme Court held that a state statute violated the Eighth and Fourteenth Amendments' prohibition against cruel and unusual punishment because it made the status of narcotic addiction a criminal offense. Petitioner argues that the statute in question here similarly made his "status" as a sexually delinquent person a criminal offense.

Unlike the statute in *Robinson*, which criminalized a "status," Michigan's sexually delinquent person law does not criminalize a status. Similar to recidivist statutes, the provisions at issue enhance the punishment for specified criminal acts—indecent exposure in this case—and does not apply to anyone who has not committed any such offenses. *See, e.g.*, *United States v. Carver*, 422 F. App'x 796, 802 (11th Cir. 2011). Accordingly, this argument fails.

## J

Finally, Petitioner contends that the standard of review set forth under 28 U.S.C. § 2254(d)(1) is unconstitutional for five reasons: (1) the limitations under 28 U.S.C. § 2254(d)(1) violate the doctrine of separation of powers; (2) the limitations under 28 U.S.C. § 2254(d)(1) violate the Supremacy Clause of the United States Constitution;  (3) the unconstitutionality of 28 U.S.C. § 2254(d)(1) requires the federal court to issue advisory opinions that may not be enforced; (4) the standard of review under 28 U.S.C. § 2254(d)(1) violates the Due Process Clause of the Fourteenth Amendment; and (5) the strictures of the AEDPA violate Article I, Section 9 of the federal

-22-

constitution because they effectively suspend the writ of habeas corpus.

First, Petitioner asserts that 28 U.S.C. § 2254(d)(1) violates the separation of powers by mandating the law to be applied by federal courts and removing their power to adjudicate constitutional issues. The Fourth and Ninth Circuits both have rejected this argument:

> In amending section 2254(d)(1), Congress has simply adopted a choice of law rule that prospectively governs classes of habeas cases; it has not subjected final judgments to revision, nor has it dictated the judiciary's interpretation of governing law and mandated a particular result in any pending case. And amended section 2254(d) does not limit any inferior federal court's independent interpretive authority to determine the meaning of federal law in any Article III case or controversy. Under the AEDPA, we are free, if we choose to decide whether a habeas petitioner's conviction and sentence violate any constitutional rights. Section 2254(d) only places an additional restriction upon the scope of the habeas remedy in certain circumstances.

*Green v. French*, 143 F.3d 865, 874-75 (4th Cir. 1998) (internal citations), *abrogated on other grounds by Williams v. Taylor*, 529 U.S. 362 (2000).

> Section 2254(d) merely limits the source of clearly established law that the Article III court may consider, and that limitation served to govern prospectively classes of habeas cases rather than offend the court's authority to interpret the governing law and to determine the outcome in any pending case.

*Duhaime v. Ducharme*, 200 F.3d 597, 601 (9th Cir. 2000); *see also, Evans v. Thompson*, 518 F.3d 1, 4-10 (1st Cir. 2008). For these reasons, the Court likewise rejects the petitioner's claim that the AEDPA standard of review violates the separation of powers by encroaching on the Court's exercise of the judicial power.

Second, Petitioner maintains that the AEDPA standard violates the Supremacy Clause of the United States Constitution. This claim has no merit because nothing in the AEDPA subjugates the Constitution to state law. As the Supreme Court has noted,

> the state courts, as co-equal guardians of federal constitutional rights, are perfectly capable of passing on federal constitutional questions. And under the Supremacy Clause, state courts are obligated to enforce the Constitution above state law to the

> contrary. Nothing in the AEDPA changes this rule of law. The AEDPA does, to be sure, require that federal courts give deference to the federal constitutional decisions of the state courts. This, however, does not offend the Supremacy Clause, which "is concerned with promoting the supremacy of federal law, not federal courts." In short, the AEDPA standard of review does not violate the Supremacy Clause because that Clause "is concerned about a conflict between state and federal law, not between state and federal judges. Indeed, to say, as the Clause does, that federal law shall be 'Supreme . . . anything in the Constitution or laws of any State to the Contrary notwithstanding' is to say nothing at all about the respective roles of the state and federal courts."

*Byrd v. Trombley*, 580 F. Supp. 2d 542, 552 (E.D. Mich. 2008) (internal citations omitted).

Therefore, the Court does not find 28 U.S.C. § 2254(d)(1) to be violative of the Supremacy Clause.

Third, Petitioner claims that 28 U.S.C. § 2254(d)(1) violates Article III of the Constitution by requiring federal courts to issue advisory opinions. However, nothing in the AEDPA "requires a federal court to determine whether a state court wrongly, as opposed to unreasonably, applied the Constitution." *Trombley*, 580 F. Supp. 2d at 552. Indeed, a federal court may, and often does dispose of a habeas case

> merely by assessing the reasonableness of the state determination, without ever rendering an opinion on the ultimate correctness of the state court decision.

> In any event, any determination on the merits of the underlying constitutional claim as part of the reasonableness inquiry under § 2254(d)(1) does not amount to an advisory opinion. The underlying constitutionality may decide the case, for if the particular claim is without merit as a matter of federal constitutional law, it necessarily follows that the state court's rejection of the claim was reasonable. At worst, a court's determination on the underlying constitutional question would be dictum, but dictum is not itself an unconstitutional advisory opinion.

*Id*. at 552-53 (internal citations omitted). Therefore, 28 U.S.C. § 2254(d)(1) is not violative of Article III as it relates to the issuance of advisory opinions.

Fourth, Petitioner contends that 28 U.S.C. § 2254(d)(1) violates the Due Process Clause of the Fourteenth Amendment. Petitioner argues that the standard of review in 28 U.S.C. § 2254(d)(1) expressly prevents federal courts from remedying a whole class of due process violations (i.e., those

-24-

in which a state court has wrongly, but unreasonably, applied constitutional guarantees to the state

defendants), and in so doing it runs afoul of the Due Process Clause.

> Contrary to petitioner's argument, under the AEDPA standard of review he "is not
> denied a forum for the vindication of his constitutional rights. The Court still has the
> power to issue the writ, albeit under more tightly circumscribed conditions." In
> particular, no due process violation can be shown in light of the historical power of
> Congress and the courts to impose limitations on the scope of habeas relief.

*Id*. at 553 (internal citations omitted). Consequently, Petitioner's due process rights have not been

violated.

Finally, Petitioner asserts that the strictures set out in the AEDPA violate Article I, Section

9 of the federal constitution because they effectively suspend the writ of habeas corpus.

> The Supreme Court has "long recognized that 'the power to award the writ by any
> of the courts of the United States, must be given by written law,' and . . . that
> judgments about the proper scope of the writ are 'normally for Congress to make.'
> " *Felker v. Turpin*, 518 U.S. 651, 664 (1996).
>
> * * *
>
> The AEDPA does not suspend the writ as it was known at the time of the Founding,
> and "[a]ny suggestion that the Suspension Clause forbids every contraction of the
> powers bestowed by Congress in 1885, and expanded by the 1948 and 1966
> amendments to § 2254, is untenable . . ." [*Felker*, 518 U.S. at 664]. "Because federal
> courts are bound by the terms on which Congress sees fit to permit relief, we have
> no constitutional or other jurisprudential basis to be reluctant to accord state court
> decisions the full degree of deference that Congress intended and that the plain
> language of the statute requires." *Neal v. Puckett*, 286 F.3d 230, 248 (5th Cir. 2002).
> In light of the nature of the writ at common law, the historical power of Congress and
> the courts to alter the nature and scope of the writ, and the fact that § 2254(d)(1)
> merely alters the standards on which the writ will issue, every court that has
> considered the issue has rejected a Suspension Clause challenge to the AEDPA
> standard of review. *See Evans*, 518 F.3d at 12; *Olona v. Williams*, 13 Fed. Appx.
> 745, 747 (10th Cir. 2001); *Houston v. Roe*, 177 F.3d 901, 906 (9th Cir. 1999); *Green*,
> 143 F.3d at 875-76.

*Byrd*, 580 F. Supp. 2d at 553-54. Therefore, there has been no Suspension Clause violation.

For these reasons, Petitioner's constitutional challenge to 28 U.S.C. § 2254(d)(1) is without

merit.

## IV

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Petitioner has not demonstrated a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case.

## V

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus (ECF No. 1) is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: July 11, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 11, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS

---